15 N.J. Super. 118 (1951)
83 A.2d 58
MURRAY A. GROSS, PLAINTIFF,
v.
WILLIAM M. KENNEDY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided August 13, 1951.
*119 Messrs. Koehler, Augenblick & Freedman (Mr. Bernard Freedman, appearing), attorney for the plaintiff.
Mr. John C. Barbour, attorney for the defendant.
*120 CONLON, J.C.C. (temporarily assigned).
Plaintiff seeks to recover some $72,500, which he claims to be due as commissions for producing a ready, willing and able purchaser for stock of the Condenser Service & Engineering Co., Inc., practically all of which stock is owned by the defendant. The contemplated sale included all of the stock of three affiliates or subsidiaries, Pottsville Casting & Machine Shops, Inc., Blackburn-Smith Mfg. Co., Inc., and Instrument Service Co., Inc., all of which were solely owned or controlled by the Condenser Service & Engineering Co., Inc. The sale was also to include all of the stock of the Edge Moor Iron Works, Inc., which the Condenser Company had an option to purchase.
The plaintiff alleges  and it is not denied  that the defendant is the owner of practically all of the stock of the Condenser Company and is therefore in virtual control of that company and its affiliates. It is further alleged that as of the date of the commission agreement on March 11, 1946, the most recent available consolidated balance sheet and profit and loss statement was that of October 31, 1945, and that the defendant falsely represented that the financial status of the several companies was substantially the same up to the time the plaintiff produced the prospective purchaser. It then developed that the balance sheets subsequent to that of October 31, 1945, showed inordinate and unexplained reductions in the financial status of the several companies. For instance, the consolidated balance sheets showed a profit for the year ending October 31, 1945, of about $715,000, while that for the year ending December 31, 1945, showed a profit of only about $315,000. Likewise the net worth reflected in the account of December 31, 1945, indicated a shrinkage of some $233,000.
The prospective purchaser, after signing an option to buy, retired from the deal after examining the later consolidated statements presented by the defendant. On the argument of this motion the defendant contended that the plaintiff's claim for commissions, under the circumstances, is so nebulous as not to warrant the relief here sought. That question is not *121 pertinent at this time, since no motion for summary judgment or motion for judgment on the pleadings is before the court.
The bona fides of the consolidated balance sheets is material to the plaintiff's cause of action. He has attempted repeatedly by interrogatories and depositions to elicit the requisite information but has been unsuccessful. The defendant has refused to disclose any details of the corporate accounts except those which he chose to. The defendant's position in substance is that since the corporations involved are distinct entities not parties to the suit, the defendant has no right of access to their books and that the court has no jurisdiction to order an examination.
A resolution of the question involves the construction of Rule 3:34-1. So far as I have been able to ascertain, it has had no judicial interpretation on the point in question in our appellate courts. The rule provides that the court may, for good cause, direct the examination of books which are in the "possession, custody, or control" of the other party. Where, as in this case, the books in question are not those of a party but of corporations not a party to the suit, it would seem that three elements should be considered by the court in determining as a matter of discretion whether the defendant should be subjected to the order here sought: (a) whether good cause has been shown for the examination; (b) whether one not a party to the suit may be unduly affected by revelation of its private affairs; and (c) whether the books and records are within the possession, custody or control of the other party.
The gravamen of the plaintiff's action is that either the consolidated balance sheets of October 31, 1945, were simulated or that the subsequent balance sheets are incorrect. The only method of ascertaining the unusual differences between the two would seem to be by an analysis of the several corporate accounts which the plaintiff is prepared to make at his own expense. Hence it would appear that good cause has been shown for the proposed examination.
If the facts disclosed that the private rights of a person *122 or corporation might be adversely infringed upon by the disclosure of records that might perchance be in the possession, custody or control of one of the parties to litigation, it might well be that the court would be justified in its discretion in declining to make such records the subject of public examination. No such situation presents itself in the instant case. The corporations involved are apparently within the sole control of the defendant. He selected and was able and willing to disclose to the plaintiff and the prospective purchaser information as to the consolidated balance sheets. No hardship is suggested if he is called upon to disclose the figures supporting them.
Assuming then, that the examination of the books in question is otherwise indicated, the only question remaining is the defendant's contention that the court has no jurisdiction to require the production of the books of a person or corporation not a party to the action. The inquiry in that respect is whether or not the defendant has "possession, custody or control" of the records in question. That would seem in the first instance to be a question of fact for this court to decide. In view of the allegations of the plaintiff that the defendant virtually owns and controls the Condenser Company and its affiliates, which allegations are not denied by the defendant, I find as a fact  at least prima facie  that the defendant is in "possession, custody and control" of the records in question and is therefore amenable to an order to produce them. If for any bona fide reason not now patent to the court he is unable to comply with such an order, the reasons for his failure to comply may be considered by the court in the disposition of any subsequent proceedings that may be brought against him for failure to comply.
While, as indicated above, the conclusions to which I have come, do not appear to have had the sanction of any appellate court in this State, the subject has had consideration in the federal courts in construing Federal Rule 34.
In the case of Societe Internationale, etc., v. Clark, 9 F.R.D. 263 (D.C., D.C. 1949), the court said:
*123 "As to plaintiff's claim that it is not shown to have possession, custody or control of the papers and documents sought to be inspected and copied, the Court finds a prima facie, case of control by plaintiff is made out. If it developes that plaintiff, after bona fide efforts to obtain access to records of its subsidiaries, affiliates and others in which plaintiff has an interest, is unable to produce them as ordered, the question of whether further action should be taken by the Court may be considered."
Professor Moore in Federal Practice (2d ed.), vol. 4, page 2470, says:
"Actual possession of the documents or things is not necessary if the party has control of them."
And again at page 2472 says:
"A prima facie case of control is all that has to be made out to justify issuance of an order; if the party, after bona fide effort, is unable to produce the documents or things, the court can then decide what further action is called for."
During oral argument the court, having in mind the recent opinion of Judge Freund in Eilen v. Tappin's, Inc., 14 N.J. Super. 162 (App. Div. 1951), and considering the possibility that the plaintiff's request for examination was too broad, suggested that, for reason shown, the court might restrict the scope of the inquiry. The defendant did not pursue the subject, and in view of the fact that the information sought is only of the records for the year 1945, it will be directed as requested.
There is one exception. It appears that the Condenser Company had only an option to purchase the stock of the Edge Moor Iron Works, Inc. As to that company there is no indication that the defendant has either possession, custody or control of its books and as to its records the motion is denied.
An order in compliance with this memorandum should be submitted promptly, either consented to as to form or with objections as to form noted by the defendant.